**BURNHAM TRUCKING CO., Inc.,**
Plaintiff,

v.

**UNITED STATES of America**
and
**Interstate Commerce Commission,**
Defendants.

**Civ. A. No. 62–498–F.**

United States District Court
D. Massachusetts.

April 5, 1963.

Raymond E. Bernard, Cambridge, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., Boston, Mass., Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States, defendant.

Robert W. Ginnane, Gen. Counsel, Francis A. Silver, Associate Gen. Counsel, I.C.C., Washington, D. C., John F. Curley, Regional Atty., I.C.C., Boston, Mass., for Interstate Commerce Commission, defendant.

Before HARTIGAN, Circuit Judge, and FORD and JULIAN, District Judges.

HARTIGAN, Circuit Judge.

This is an action to enjoin, set aside and annul certain orders of the Interstate Commerce Commission (hereinafter the Commission) denying various petitions for reconsideration and other relief in a proceeding involving an application by plaintiff trucking company for permits, or temporary authority, authorizing operation, in interstate or foreign commerce, as a contract carrier by motor vehicle, of bowling equipment from designated points in Massachusetts to points in seventeen named states and the District of Columbia.

On July 13, 1959 the plaintiff—Burnham Trucking Company, a Massachusetts corporation—filed with the Commission an application under section 210a(a) of the Interstate Commerce Act (49 U.S.C. § 310a(a), seeking to obtain temporary authority to operate as a contract carrier by motor vehicle. The application was opposed by numerous motor carriers and on August 11, 1959 the Commission, Division I, denied the application because the plaintiff "had not established there exists an immediate and urgent need for any of the service proposed."

Plaintiff filed a petition for reconsideration and on October 2, 1959 the Commission granted the temporary authority for a period of 180 days.

On November 25, 1959 plaintiff filed with the Commission an application under section 209(b) of the Act (49 U.S.C. § 309(b)) in which it sought to obtain a permanent permit authorizing the operation being carried on under the temporary authority. On December 18, 1959 the Commission assigned plaintiff's application for hearing on February 9, 1960. However, upon plaintiff's request, the Commission on January 28, 1960 postponed the hearing to a date to be thereafter fixed.

On March 1, 1960 the Commission notified the plaintiff that it was authorized to continue under its temporary authority until further order of the Commission but not beyond the time that its request for permanent authority was finally determined.

On April 20, 1960 plaintiff applied for a permanent contract carrier permit for the same service covered by its temporary authority. Thereafter, by order dated May 9, 1960 plaintiff's temporary authority was extended "until August 19, 1960, unless earlier terminated."

The Commission, thereafter, set July 18, 1960 as the date for a hearing on plaintiff's application for both temporary

and permanent authority. The two applications were to be heard on the same date before the same hearing examiner.

By letter dated June 13, 1960, plaintiff requested that the hearing date of both cases be postponed. By telegram of June 29, 1960, plaintiff's counsel was advised that the application for postponement of the hearing was denied. Subsequently, on July 8, 1960, plaintiff filed a formal petition for indefinite postponement of the hearing in both dockets. This petition was denied by order of the Commission (Division I) "for the reason that no sufficient justification has been shown for the postponement."

Both applications were called for hearing at the appointed time in Boston on July 18, 1960. At this hearing Robert Burnham, president of plaintiff, appeared personally without counsel—although counsel of record was then in the case and had actively participated prior thereto—and orally moved for an indefinite postponement of the hearing on both applications. In support of this motion Burnham offered a copy of the Petition for Postponement—previously filed on July 8, and a copy of a document entitled "Petition for Reconsideration and Stay of Order" bearing the date of July 6, 1960. Burnham also offered, as a basis for his request, some advice stated to have been given to him by his counsel and, thereafter, moved to exclude the other common carriers present from participating in the hearing.

The hearing examiner denied this motion to exclude the common carriers and stated his inability to grant the petition for indefinite postponement. Burnham declined to go forward with the plaintiff's case and no evidence was offered or received at the hearing. On July 28, 1960 the hearing examiner filed and served on the plaintiff and other parties in interest a report (embracing both of plaintiff's applications) in which he found that the plaintiff had failed to establish that the proposed operations were consistent with the public interest and the national transportation policy, and that the application should be denied.

Plaintiff seasonably filed exceptions to the examiner's report with the Commission on August 22, 1960. On April 12, 1961 the Commission (Division I), issued its report, again embracing both of plaintiff's applications, in which it found that in both proceedings operation by plaintiff as a contract carrier had not been shown to be consistent with the public interest and the national transportation policy and that the application should be denied. In reaching this conclusion, the Commission stated, *inter alia*, that: "Since applicant failed to prosecute its applications after being afforded ample opportunity to do so, we conclude that the application should be denied."

■ Following the Commission's ruling plaintiff filed a proliferation of additional applications, petitions for reconsideration and sundry other motions variously styled, extending over a period of a year, whose history need not be recounted. The basic question presented here is whether the failure of the plaintiff to prosecute its applications at the time it was called for hearing on July 18, 1960, and after plaintiff was accorded ample opportunity to do so, warranted the finding of the Commission.

■ We believe that the action of the hearing examiner and the affirmatory action of the Commission were amply justified by this record. The thrust of plaintiff's argument is, that by its mere request, it became entitled to a postponement and was under no obligation to go forward with the scheduled hearing on July 18. Plaintiff argues that it was entitled to a postponement because of the language in section 5(a) of the Administrative Procedure Act (5 U.S.C. § 1004(a)) that "In fixing the times and places for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives." Plaintiff contends that it was "inconvenient" for it to go forward with the July 18th hearing because of an asserted inability to obtain its principal shipper witness at such a "busy" period in the bowling equipment business.

It is our opinion that plaintiff reads too much into the foregoing language. The statute expressly speaks of the convenience of the "parties" and we interpret this to mean that in scheduling an application for hearing, the convenience of all persons concerned—the applicant, the agency, the opposing shippers—all must be accorded due recognition. Due regard for the convenience and necessity of the parties cannot be divorced from the convenience of the agency. The record indicates that the Commission carries a heavy workload and nothing could be more disruptive of its administrative efficiency than capricious postponing of previously scheduled hearings.

■ In the instant case, plaintiff's motion for postponement did not identify any of its alleged witnesses, their places of residence, when or where they would be available, or what particular relevant testimony they would give. There was no showing that plaintiff had made any request to the Commission, or to the hearing examiner, for the issuance of subpoenas for any witnesses, as authorized by Rule 56 of the General Rules of Practice of the Commission (49 U.S.C. Appendix) nor was there any showing that depositions could not be taken of any material witnesses, as authorized by Rule 57. In short, the only thing which the hearing examiner had on which to make his ruling on the motion for continuance was the *ipse dixit* of the plaintiff.[1] And, in our view, this was an insufficient predicate to compel the hearing examiner to grant a postponement. It is well settled that the matter of continuances rests in the sound discretion of the examiner and that reviewing courts will not interfere except upon a "clear showing of abuse." National Labor Relations Bd. v. Algona Plywood & V. Co., 121 F.2d 602, 605 (7th Cir., 1941). Suffice it to say we find no such abuse here.

We have considered the other points raised by plaintiff and find them to be without merit.

A judgment will be entered affirming the Order of the Interstate Commerce Commission.

1. As the following colloquy will indicate, counsel admitted to us at oral argument that he purposefully sent his client alone to the July 18th hearing as a matter of "trial tactics." Although we could say more, we simply state that such "tactics" fall short of what both courts and administrative agencies have a right to expect from counsel:

"Judge Ford. One thing interests me. You allowed Mr. Burnham to present himself personally before the Commission or Hearing Examiner. Why didn't you go?

"Mr. Bernard. I have an answer for that. I still want to get back * * *

"Judge Ford. Let's have the answer. You were counsel then.

"Mr. Bernard. Exactly.

"Judge Ford. Why didn't you go and present these excuses you talk about usually presenting to the ICC in your 18 years experience?

"Mr. Bernard. The ICC at that time had before it two pleadings * * *

"Judge Ford. I asked a simple question. Why didn't you attend yourself, as counsel?

"Mr. Bernard. I did not attend because as a matter of strategy I felt that if I were to attend we would have got into a regulatory fight which would have been far bigger * * * they would have said, 'Go forward with your case,' and we did not have our shipper witness. We couldn't go forward.

"Judge Julian. You deliberately absented yourself?

"Mr. Bernard. I deliberately, as a matter of strategy. All that needs to be on the record, and we have the record here, that Mr. * * * as far as law goes I had said everything I could say. I had nothing else I could say.

* * * * *

"Judge Hartigan. Your argument that it was strategy certainly doesn't strike me very much in your favor, that you sort of set up a trap on these things. If that is the kind of procedure they have I wouldn't tolerate it, as a trial judge, as strategy. * * *"